No. 13-0936 – *Estella Robinson v. City of Bluefield*

**FILED**

November 14, 2014
**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

Benjamin, Justice, concurring:

I fully understand my dissenting colleagues' reliance on emotion in reaching their conclusions in this case. Cases involving dogs generate a great deal of emotions. This is especially true when, as here, a dog has seriously injured someone. It is important, however, that we, as a Court, maintain our focus on the law of the case, not what we wish the law to be—but isn't. While it is tempting to want to expand our role into that of policy, rather than that of law, the policy determinations herein are those of the Legislature, not this Court. It is the Legislature which has set forth the law which determines this case and it is for the Legislature to change that law if a change is warranted.

The sole issue before the Court in this case was whether a municipal court has the authority to act as it did below pursuant to city ordinance. The Majority decision concluded—upon applying long-standing basic rules of statutory construction to the pertinent sections of the West Virginia Code—that our Legislature did not intend for municipalities to have that authority. The Majority's decision is correct. I write separately to underscore the obligation of our judicial branch to enforce our Legislature's intent and the rule of law in West Virginia, and to resist founding our decision on emotion, strong as the desire may be to do so in this case.

1

Dogs are, in most jurisdictions, personal property. *See, e.g.*, W. Va. Code § 19-20-1 (1975) ("Any dog shall be and is hereby declared to be personal property within the meaning and construction of the laws of this State . . . ."). However, because "[a]n increasing number of American households regard their companion animals as being as much a part of their family as they do their human family members," states have begun to treat companion animals differently from other types of animals and other types of personal property. Sabrina DeFarbritiis, *Barking Up the Wrong Tree: Companion Animals, Emotional Damages and the Judiciary's Failure to Keep Pace*, 32 N. Ill. U. L. Rev. 237, 237–38 (2012) (hereinafter *Barking Up the Wrong Tree*). For instance, Connecticut, Illinois, and Tennessee have enacted statutes expressly permitting recovery of non-economic damages for the loss of a companion animal. *Id.* at 255 n.97 ("Conn. Gen. Stat. § 22-351a (2009) (originally enacted in 2004); 510 Ill. Comp. Stat. 70/16.3 (2010) (originally enacted in 2002); Tenn. Code Ann. § 44-17-403 (West 2010) (originally enacted 2000)."). Companion animals have also been the subject of custody and estate planning or administration cases. *See* Susan J. Hankin, *Not a Living Room Sofa: Changing the Legal Status of Companion Animals*, 4 Rutgers J. L. & Pub. Pol'y 314, 351–65 (2007).

The West Virginia Legislature has enacted statutes that treat animals which may be companion-animals, such as dogs, in a different manner than other types of personal property. *See* W. Va. Code § 19-20-1 *et. seq.*; W. Va. Code § 19-20A-1 *et. seq.*;

W. Va. Code § 19-20B-1 *et. seq.*; W. Va. Code § 19-20C-1 *et. seq.*; W. Va. Code § 19-20D-1 *et. seq.* For instance, the Legislature has specifically delineated a punishment for destroying a dog,[1] and this punishment is separate and apart from the punishments provided for destroying other types of animals,[2] or other personal property.[3] Considering that the human-animal "bond often causes extensive emotional suffering by the human companion when the animal is injured or killed by a third-party's intentional or negligent act," DeFarbritiis, *Barking Up the Wrong Tree*, 32 N. Ill. U. L. Rev. at 238, it is unsurprising that the Legislature would create a method by which the destruction of dogs is treated differently than the destruction of other personal property.

---

[1] W. Va. Code § 19-20-12(a) (2007) ("Any dog which is registered, kept and controlled as provided in this article or any dog, . . . kept and maintained as a companion animal by any person, irrespective of age, is protected by law; and, except as otherwise authorized by law, any person who shall intentionally, knowingly or recklessly kill, injure, poison or in any other manner, cause the death or injury of any dog . . . is guilty of a misdemeanor and, upon conviction thereof, shall be ordered to provide public service for not less than thirty nor more than ninety days or fined not less than three hundred dollars nor more than five hundred dollars, or both." (In part.)).

[2] W. Va. Code § 61-3-27 (1994) ("If a person maliciously administers poison to, or exposes poison with the intent that it should be taken by, any horse, cow or other animal of another person, or if any person maliciously maims, kills, or causes the death of any horse, cow or other animal of another person, of the value of one hundred dollars or more, the person is guilty of a felony, and, upon conviction, shall be imprisoned in the penitentiary not less than one year nor more than ten years; and, if the horse, cow or other animal is of less value than one hundred dollars, the person is guilty of a misdemeanor, and, upon conviction, shall be confined in jail not more than three months and fined not more than five hundred dollars: Provided, That this section shall not be construed to include dogs.").

[3] W. Va. Code § 61-3-30(a) (2004) ("If any person unlawfully, but not feloniously, . . . destroys . . . any property, real or personal, of another, he or she is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars, or confined in the county or regional jail not more than one year, or both fined and imprisoned.").

3

Part of the Legislature's method for dealing with the destruction of dogs is the requirement that *only* magistrates and circuit courts have the authority to order the destruction of a dangerous dog, upon receiving satisfactory proof that the dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals. There are a number of reasons why the Legislature would limit this authority to only magistrates and circuit courts to the exclusion of municipal courts. First, magistrates and circuit judges are all elected officials, and as such, the people who elect them hold them directly accountable for their decisions. Second, there are a variety of qualifications that must be met to hold office as a magistrate or circuit judge. Circuit judges must be licensed attorneys who have practiced law for at least five years prior to taking office. W. Va. Const. art. VIII, § 7. Magistrates

> shall be at least twenty-one years of age, shall have a high school education or its equivalent, shall not have been convicted of any felony or any misdemeanor involving moral turpitude and shall reside in the county of his election. No magistrate shall be a member of the immediate family of any other magistrate in the county.

W. Va. Code § 50-1-4 (1992). Third, magistrates have the ability to sentence someone criminally for up to one year, and circuit courts can impose much harsher sentences. W. Va. Const. art. VIII, § 10; W. Va. Code § 50-2-3 (1993); W. Va. Code § 51-2-2 (2008). Both magistrates and circuit judges must complete continuing judicial education courses throughout their terms of office. W. Va. Code § 50-1-4; W. Va. R. Disciplinary P. 7.14(A); W. Va. R. Disciplinary P. 7.16(A).

4

Unlike with magistrates or circuit judges, there is no legislative requirement that municipal judges be elected.[4] The charter of the City of Bluefield, for example, provides that municipal judges hold office at the pleasure of the municipality's board of directors. Additionally, although many municipal judges in West Virginia are licensed attorneys, there is no requirement that they be so. There are almost no minimum qualifications to serve as a municipal judge. As is the case with the City of Bluefield, the only minimum requirement for serving as a municipal judge is that he or she not have been "convicted of a felony or any misdemeanor crime set forth in" certain delineated portions of the Code dealing primarily with sex offenses. W. Va. Code § 8-10-2(b) (2007). However, the Legislature has provided that municipal judges who are not lawyers take a course in rudimentary principles of the law and procedure, and that municipal judges who are not lawyers attend continuing education annually. W. Va. Code § 8-10-2(c). Finally, compared to the powers of magistrates and circuit courts, municipal courts' powers are limited. For example, according to its charter, the Bluefield municipal court may only impose a fine up to $500 and may not order imprisonment for a term greater than 30 days.

Therefore, where the lives of companion animals such as dogs are at stake, lives for which the Legislature has imposed a minimum $300 fine and a 30-day sentence

---

[4] The Legislature permits for the election or appointment of municipal judges, in accordance with a municipality's charter or ordinances. W. Va. Code § 8-10-2(a) (2007).

of public service for the wrongful taking thereof, it is reasonable to interpret that the Legislature intends to place those lives in the hands of the more legally accountable and authoritative magistrates and circuit judges of this state.

Chapter 19, Article 20 of the West Virginia Code represents the Legislature's acknowledgment of the unique role companion animals, such as dogs, hold with West Virginians. While the early twentieth century saw this Court uphold municipal ordinances permitting municipal judges to order the destruction of dogs, *see City of Buckhannon ex rel. Cockerill v. Reppert*, 118 W. Va. 10, 10, 189 S.E. 585, 585 (1937) (Kenna, J., concurring), the Legislature, in enacting statutes like W. Va. Code § 19-20-20 in the latter half of the century, reveals a definitive shift in the Legislature's attitude toward companion animals such as dogs. Thus, while one may certainly argue that most municipal court judges could be counted on to fully consider the matters herein, it is the Legislature's policy call and it is our obligation to enforce that policy.

As the Majority opinion makes clear, municipalities may still "enact ordinances prohibiting a person from owning, keeping or harboring a dog known to be vicious, dangerous or in the habit of biting or attacking persons, and may pursue charges against an owner of such a dog in municipal court." Furthermore, the Legislature has specifically provided the same in W. Va. Code § 19-20-20. Should a municipality wish to

have a dangerous dog destroyed, it need only present its case to a local magistrate or

circuit court.[5]

---

[5] In an obvious effort to further ensure the protection of the public, the Legislature has also recently provided for a private cause of action by which persons injured by a dog may seek to have that dog euthanized. W. Va. Code § 19-20D-1 *et seq.* This article provides that the action must be brought before a *magistrate court*, it lists a number of elements necessary for maintaining the action, and it states that a petitioner must prove his or her case by clear and convincing evidence. W. Va. Code § 19-20D-2 (2014).